Walker v. Deaver.

WALKER'S ADMINISTRATOR v. DEAVER *et al.*, *Appellants.*

1. **Pleading**: DEFECT OF PARTIES. Where a defect of parties defendant is apparent on the face of the petition, (as where the suit is against heirs when it should be against the administrator,) advantage must be taken of it by demurrer. It will be deemed waived if defendants answer, even though they insist on the defect in their answer.

2. **Covenants**: ACTION AGAINST HEIRS. Where a breach of covenant occurs after the covenantor has died and his estate has been fully administered, the covenantee is not driven to a new administration and a suit against the administrator *de bonis non*, but may maintain an action against the heirs direct, and they will be liable to the extent of assets descended.

3. **Married Woman**: JUDGMENT AGAINST: HER REMEDY. This court will not reverse a judgment against a defendant on the ground that she is a married woman, when that fact appears only by the caption of the petition. The caption is mere *descriptio personae*. If she is in fact a married woman, she has her remedy by writ of error *coram nobis*.

4. **Covenants against Incumbrances**: DOWER: DAMAGES. An outstanding dower interest·existing at the date of a conveyance, constitutes a breach of a covenant "to defend and warrant against all persons, claims, liens, titles and incumbrances." The breach occurs as soon as the covenant is made; but until there is an actual loss or eviction, or its equivalent, the damages recoverable are only nominal. The covenant runs with the land, and where possession is given, enures to the benefit of a subsequent grantee.

5. ———: ———. The liability of a covenantor to indemnify against a claim for dower must be determined by the law in force at the time the covenant was made. If no dower existed then, subsequent legislation creating it could not make him liable. But if there was a dower right, which only became consummate after a change in

Walker v. Deaver.

the law as to the mode of assignment, and it is assigned according to the new law, the covenantor is liable.

6. ———: ———: DOWER ACT OF 1825. By the act of 1825 it was provided that no widow should be entitled to dower until all her husband's just debts were paid. While this was in force, a husband sold land with warranty but without his wife's relinquishment of dower. It subsequently passed through the hands of several successive purchasers, each of whom covenanted against incumbrances. After the death of the husband his widow sued the last purchaser for dower and obtained judgment. He paid the judgment and fell back upon his grantor, who in turn paid and fell back upon the heirs of the first-purchaser. They defended upon the ground that their ancestor's grantor (the husband of the doweress) had died insolvent, that the payment of any sum for dower would create a liability on the grantor's covenant, which, by reason of the insolvency of his estate, they would be unable to enforce, and, therefore, under the act of 1825, above mentioned, the widow was not entitled to dower. No suit had been brought against the husband's estate to establish a debt on account of this covenant. *Held,* that the defense was untenable. R. S. 1825, p. 332, § 1.

7. ———: EVICTION. To entitle the plaintiff to recover on a covenant against incumbrances, it is not necessary to show actual eviction. If the incumbrance (such as a dower right) has been established by legal proceedings, and he has paid the judgment, that is sufficient.

8. ———: JUDGMENT INTER ALIOS AS EVIDENCE. Where a widow obtained judgment for her dower interest in land, and defendant paid the judgment and then sued and obtained judgment against his immediate grantor for the amount so paid, and the latter paid this judgment and in turn sued the heirs of his grantor on their ancestor's covenant; *Held,* that the record of the judgment in favor of the widow, though *res inter alios acta* for other purposes, was admissible for the purpose of showing the eviction.

9. ———: MEASURE OF DAMAGES: DOWER. The damages recoverable on a breach of covenant against incumbrances, are what the covenantee has paid to extinguish the incumbrance, if he has paid a reasonable and fair price, without reference to the value of the land or the purchase money. Hence, where the incumbrance was a dower right, and the plaintiff had paid it off, and the defendant, who had purchased from the husband of the doweress, showed that while he held the land there was no increase in its value; *Held,* that the plaintiff was nevertheless not limited in his recovery to one-third of what defendant had paid for the land.

10. ———: LIABILITY OF HEIRS ON COVENANT OF ANCESTOR. Heirs are liable on the covenant of their ancestor only to the extent of assets received, and each for his *pro rata* share. Though there is no joint

liability, they may be sued jointly. The judgment should ascertain and declare the liability of each separately.

11. **Married Women**: LIABILITY TO ACTION. Where the liability of a married woman arises on an obligation existing against her prior to coverture, she and her husband are properly joined as defendants in the action, and judgment should go against both.

12. **Dower.** The age and health of a doweress are not to be taken into consideration in determining the annual value of her dower interest.

13. **Covenant**: EVICTION: JUDGMENT FOR DOWER. A judgment assessing the annual value of plaintiff's dower in land and requiring the defendant to pay the same from year to year, together with payment as required, constitute such eviction as amounts to a breach of a covenant against incumbrances.

*Appeal from St. Louis Court of Appeals.*

JUDGMENT MODIFIED.

*E. Casselberry* and *Gottschalk & Bantz* for appellant.

*J. M. & C. H. Krum* for respondent.

PHILIPS, C.—In December, 1829, one Thomas Houghan, of St. Louis, sold and conveyed to one Larkin Deaver, of said city, a lot of ground in said city, for the expressed consideration of $5,000. The granting clause of this deed contained the following: "Have granted, sold, aliened, enfeoffed and confirmed, and by these present do grant, bargain, alien, enfeoff and confirm unto the said Larkin Deaver," etc. The *habendum* clause contained the following: "To have and to hold said lot of ground, with buildings and improvements thereon, and all privileges, rights and appurtenances thereto belonging unto him, said Larkin Deaver, his heirs, assigns forever; and the said Thomas Houghan for himself, his heirs, executors and administrators, doth covenant with said Deaver, his heirs, executors, administrators and assigns, that the said Thomas Houghan, his heirs, executors and administrators, will forever warrant and defend the said lot of ground and every parcel thereof, unto him, the said Deaver, his heirs and assigns, against

all persons, claims, liens, titles and incumbrances whatsoever, either in law or equity." In February following said Larkin Deaver sold and conveyed this lot to one Joshua Walker for the same consideration expressed in the foregoing deed and containing the same covenants. In October, 1833, said Joshua Walker sold and conveyed the said lot to one Isaac Walker in exchange for certain real estate conveyed to said Joshua by said Isaac, said deed from Joshua containing the same covenants as the foregoing deeds. In June, 1857, said Isaac sold and conveyed said lot to Mrs. Mary L. Tyler, for the expressed consideration of $78,760, and containing the same covenants.

It appears that in 1814 said Houghan was married to Sophia Knapp, in the state of New York, and that she was yet living at the time of the institution of the suit hereinafter mentioned, aged about eighty-six. Larkin Deaver died intestate in 1850. His estate was duly administered, and finally settled in 1856. Houghan also died, and his estate was fully administered and closed; soon after the year 1862. There was nothing left of his estate after payment of debts, etc.

In October, 1863, said Sophia, as the widow of said Thomas Houghan, brought suit in the St. Louis land court, against said Mary L. Tyler, for the recovery of her dower interest in said lot, in which she recovered, on the 14th day of June, 1864, judgment for her said dower interest, computed at the sum of $433.35, together with costs of said suit, in all amounting to $542.54. It was further adjudged in said cause that the yearly sum of $650 be paid to her, as and for the yearly value of her dower in said premises during her life. Mrs. Tyler paid said damages and costs, amounting to $542.54, and in February, 1865, she instituted in the St. Louis land court, a suit against said Isaac Walker to recover the said sum, on the breach of the warranty and covenants in his said deed to her against incumbrances, by which action she recovered against said Isaac the sum of $564.05, which he then paid together with $20.15 costs.

Each year thereafter, she, down to the year 1869, recovered and received from said Isaac the said yearly amount of $650, ordered as aforesaid to be paid by her to said Sophia (Mrs. Tyler having, during said time, paid the same to said Sophia,) making a total of $2,534.25 so paid by said Isaac in his lifetime. Said Isaac died in October, 1868, after which his administrator, Thomas Walker, continued to pay and refund to Mrs. Tyler, each year as she paid to Mrs. Houghan, down to the month of June, 1872, the said sum of $650, amounting in the aggregate to $2,600. In January, 1873, said Thomas Walker was removed from the executorship of said estate, and the plaintiff John G. Priest became administrator *de bonis non* of said estate. He continued each year to make said payments to Mrs. Tyler, as she had so continued said payments under the said judgment in partition aforesaid, down to the month of June, 1874, amounting in the aggregate to $1,300.

In February, 1879, the plaintiff, as administrator *de bonis non*, brought this suit to recover of the heirs at law the sum so paid as aforesaid. The petition alleges that the defendants are the heirs of said Larkin Deaver, deceased ; that said defendants received as such heirs and legal distributees from the estate of said Larkin Deaver, assets much larger than the amount claimed from them in this action. The petition also sets out in detail the facts above stated, alleging that " by said deed the said Larkin Deaver covenanted to and with the said Joshua Walker, his heirs and assigns, that the said premises so conveyed were free and clear from all incumbrances, and that said Larkin Deaver also thereby covenanted to, by and with the said Joshua Walker, his heirs and assigns, that he and his heirs, executors and administrators would forever warrant and defend the said premises unto the said Joshua Walker, his heirs and assigns, against the lawful claims and demands of all parties whomsoever." The petition also alleged notice to the said grantors and to the defendants of the institution of the several suits respecting said dower and by

Mrs. Tyler against said Isaac Walker The petition seeks to recover judgment against the defendants for the several sums paid by Isaac Walker in his lifetime, and the sums paid by Thomas Walker, administrator, and for the sums paid by the plaintiff, and interest on the several sums from the date of their several payments to the time of the trial.

The answer pleaded the general issue and tendered the following special pleas:

1. That the defendants are not proper parties, but an administrator *de bonis non* should have been appointed and suit brought against him.

2. That the real estate did not increase in value while Larkin Deaver owned it; that by the first section of the act of the general assembly of the State of Missouri, entitled an act "Concerning Dower," approved February 5th, 1825, it is provided that no widow shall be entitled to dower in any lands, tenements or hereditaments until all just debts due or to be due by her deceased husband shall have been paid; that said act continued in full force until the 4th day of July, 1835; that while said act was in full force, said deed mentioned in the petition from said Thos. B. Houghan and wife to Larkin Deaver, dated December. 30th, 1829, was executed and delivered by said Thomas B. Houghan and wife to said Larkin Deaver; that said Thomas B. Houghan was the owner of no property, real, personal or mixed, at the time of his death, and, therefore, the plaintiff cannot recover any part of the alleged sums of money demanded in his petition; because such recovery would create a debt in favor of defendants against the estate of said Thomas B Houghan precisely equal to the amount so recovered, which would be in direct violation of said 1st section of said act of the general assembly, which forbade the widow from directly or indirectly creating any such debt by her own acts or by the acts of others whose proceedings were caused by her acts.

3. That at the time said Larkin Deaver conveyed the said real estate to the said Joshua Walker, the same includ-

ing the buildings thereon, was worth the sum of $5.000, and no more, and that at that time there were buildings thereon of the value of $4,000, which buildings the said Isaac Walker, after the said premises were conveyed to him by the said Joshua Walker, tore down and removed therefrom; and the said premises, exclusive of the value of said buildings, were worth the sum of $1,000, and no more. Wherefore, if plaintiff shall be adjudged entitled to recover any damages on account of the alleged claim of Sophia Houghan, for dower in the said premises, the amount of such recovery should be measured and adjusted according to the value of said premises, exclusive of the value of said buildings.

The matters pleaded in the second and third special defenses were, on motion of the plaintiff, stricken out as constituting no defense.

On the trial the deeds evidencing the several conveyances aforesaid were read in evidence; also the record in the suit of Sophia Houghan for recovery of dower, and of Mrs. Tyler for recovery on the covenants of warranty against Isaac Walker; defendants objecting and excepting. The following admissions were made, to-wit:

1.   That the property described in plaintiff's petition did not increase in value between December 30th, 1828, and February 21st, 1830, being the period whilst the title thereto was held by Larkin Deaver.

2.   That Isaac Walker, after ne acquired title to the property, and about 1834 or 1835, took down and removed the improvements that were on the property, and erected and put up other and more expensive improvements, and the party to whom Isaac Walker conveyed the property put up additional improvements, which are now on the property.

3.   That the improvements which were on the property in question while Larkin Deaver held the title thereto, did not exceed in value $2,000, and were worth $1,500 when he conveyed to Walker

4. That Thomas B. Houghan, about the year 1814, married Sophia Knapp, in the state of New York, who is now living in said state, aged about eighty-six years; that Houghan died August 20th, 1862, in the city and county of St. Louis, and by his will devised all his property to Wm. Essex, who administered on the estate of said Houghan; and that said estate has been fully administered, and after paying all debts allowed against said estate, and the expenses of the administration, there remained nothing to be distributed to the legatee or to pay debts.

5. That Larkin Deaver died in the year 1850; that the administration of his estate was finally settled and closed in the year 1856; that the defendants are children and heirs of said Larkin Deaver; and that they received assets of the estate of said Larkin Deaver more than sufficient to pay the amount claimed by the plaintiff in this action.

6. That the annual tax, not including the improvements as on the property in question from August 20th, 1862, when Houghan died, to the present time, exceed the annual rental of said property while Larkin Deaver owned it.

The plaintiff made proof of the payments by Mrs. Tyler to Mrs. Houghan, and by Isaac Walker to Mrs. Tyler, of the several sums named, and the dates of said payments, as stated in the petition; and of the several payments made by the administrator and executor as alleged.

The plaintiff also offered evidence tending to show the value of the rentals of the lot in question, exclusive of the improvements, after the recovery of the judgment dower suit in 1864, this being done presumably with a view of establishing the fact that the amounts paid to Mrs. Houghan on account of said dower interest were reasonable.

The defendants put in evidence the annuity tables, as bearing upon the same issue.

The principal controversy arises on the following instruction given on behalf of the plaintiff: "If the court

finds for the plaintiff, the measure of damages is the actual amount which was paid by said Isaac Walker, as well as by his legal representatives, to discharge and pay off said dower claim of said Sophia Houghan, with interest from the time each payment was made to the time of trial, provided that the court shall believe from the evidence that the amount so paid was the fair and reasonable value of said dower and claim of said Sophia Houghan. The plaintiff can only recover the reasonable and fair value of the said dower of the said Sophia Houghan."

The court having found the issues for the plaintiff, the defendants appealed to the St. Louis court of appeals, where, by stipulation, the judgment of the circuit court was affirmed *pro forma*. The defendants bring the case here by appeal.

I. Counsel for defendants raise several minor questions, of a mere technical character, that will be first considered. It is objected that an administrator *de bonis non* should have been appointed *ad litem*, and the suit brought against him. This defect, if one, was apparent on the face of the petition. The objection, therefore, should have been taken by demurrer, and unless so taken it is waived. *Gimbel v. Pignero*, 62 Mo. 240; *Dunn v. Hann. & St. Jo. R. R. Co.*, 68 Mo. 269; *Butler v. Lawson*, 72 Mo. 247. But the defendants say they did raise this question by answer. The Practice Act, section 3519, Revised Statutes, provides that "when any of the matters, * * do not appear upon the face of the petition, the objection may be taken by answer." But here the objection does appear on the face of the petition, that the suit is not brought against the administrator. In such case the defect can only be taken advantage of by demurrer. "If he fails to demur when the defect appears on the petition, or fails to set up the non-joinder by answer, when it does not appear on the face of the petition, he will be presumed to have waived the same." *Horstkotte v. Menier*, 50 Mo. 160. It is to be

1. PLEADING : defect of parties.

observed that in the case of *Titterington v. Hooker*, 58 Mo. 593, cited by counsel, the question arose on demurrer.

On the merits of this question, also, I am unable to distinguish, on principle, this case from that of *Metcalf v. Smith*, 40 Mo. 572. It was distinctly held there that the heirs, to the extent of the estate taken by descent, are liable in a direct action on the covenant of the ancestor. The heir has received and appropriated assets which were bound to make good the covenant of the ancestor, and discharge the land from the incumbrance. In this particular it differs from the case of an ordinary claim against the estate. In the latter case it was held, in *Titterington v. Hooker*, 58 Mo. 593—a clear and able opinion—that the doctrine of equitable assets, the marshalling of assets, and bills of discovery, is superseded by our Administration Law. But the learned judge quite conspicuously draws out the distinction between the case of an ordinary creditor and that of the successive grantee who has been compelled to satisfy an incumbrance, and proceeds against the heir of the grantor for restitution : " The money received by the heirs from the partition sale should have gone to pay the debts of the estate, and as the plaintiffs, in effect, paid it for them, they were permitted to recover from the heirs, as for money paid at their instance and request. Metcalf and Snyder were not, in any sense, creditors of the estate of Smith, but had simply paid money to the use and benefit of the heirs, and a recovery from them was supported on that ground." The court further say, that the petition disclosed the fact that the demand of the plaintiff was allowed and ordered to be paid. If so, there must have been assets in the hands of the administrator. In such a case he had a clear remedy by execution on his judgment, and, under the Administration Law, to subject the land to the payment of his debts.

But in the case at bar, the estate for many years had been finally administered, and the assets all distributed. The cause of action did not accrue until long after admin-

43—79

*(margin note: 2. COVENANTS: action against heirs.)*

istration was closed and distribution made. There is no pretence of the existence of any other creditor or liability. The only funds to be reached are assets received by the heirs. Under such circumstances, and for such isolated object, why open the administration to go through the formulary of an allowance against the estate, not in the hands of the administrator, but in that of these defendants? Why have the administrator go after the heirs, and the plaintiffs after the administrator, with the accumulated costs and the inevitable delay? As satisfaction is ultimately to come from the heirs, why should they demand the circumlocution and burden of another administration? In a case situated like this the direful results, confusions and inequalities, suggested by the learned counsel for defendant, in permitting the plaintiffs to proceed directly against the heirs, are entirely fanciful. The maxim, *cessante causa, cessat effectus*, becomes, in such a case, a principle both of common sense and justice. *State Savings Asso'n v. Kellogg*, 52 Mo. 583.

II. The objection is raised, for the first time in this court, that the judgment is rendered against some of the

3. MARRIED WOMAN: judgment against: her remedy.

defendants who are now claimed to be married women. I do not find that this fact, if it exists, appears of record in such form as we can pass upon its legal effect. The caption of the petition is mere *descriptio personae*. It nowhere appears from the petition that any of the defendants are under coverture; nor does it so appear in the judgment; nor is any such question raised by the motion for new trial or in arrest of judgment. If parties desire to raise such issues they should do so timely and in the proper way. After trying a case on the real substantive matters in controversy they ought not to be heard as to mere matters of abatement not apparent of record. If in fact judgment was rendered against a married woman, she is not without an ample remedy, by writ of error *coram nobis*, on motion. *Powell v. Gott*, 13 Mo. 461. See also *Weil v. Simmons*, 66 Mo. 617.

III. The covenant in the granting part of the deed, arising on the words " grant, bargain and sell," is statutory, and binds the grantor only as to incumbrances "done or suffered by the grantor." R. S. 1825, p. 217, § 5. As the incumbrance complained of is the dower interest of Mrs. Houghan, it was not one done or suffered by Deaver, and, therefore, constitutes no breach of the statutory covenant. The breach, if any, must spring from the general covenants contained in the *habendum* clause, in which Deaver covenants for himself, his heirs, etc., to " forever defend and warrant said lot of ground unto the said Joshua Walker, his heirs and assigns forever, against all persons, claims, liens, titles and incumbrances whatever, whether in law or equity."

*[margin: 4 COVENANTS AGAINST INCUMBRANCES: dower: damages.]*

There is no question but under the law, as construed by our Supreme Court, this covenant against all incumbrances, is perfectly consistent with the special covenant, implied by the words " grant, bargain and sell." *Alexander v. Schreiber*, 10 Mo. 460. A special covenant restrains a general one only where the two are absolutely irreconcilable. And where they are independent of each other, though in the same deed, they will be upheld. *Ib.*

The dower interest of Mrs. Houghan, though inchoate at the time of the execution of the deed, was an incumbrance, and constituted a breach of the general covenant, for which an action might have been maintained instantly. This covenant covers all such claims depending on a future contingency, " whereby the same may be defeated, wholly or in part, whether the claims or liens be uncertain and contingent or otherwise." *Shearer v. Ranger*, 22 Pick. 447. But until there is an actual loss, eviction, or its equivalent, consequent upon this incumbrance, only nominal damages are recoverable. 3 Washburn Real Prop., (4 Ed.) 458, (658); *Dickson v. Desire*, 23 Mo. 163, 164, 165, 166; *Maguire v. Riggin*, 44 Mo. 514.

In *Dickson v. Desire* it is held that the statutory covenant runs with the land, and where possession accompanies

the conveyance, it enures to the benefit of the subsequent grantees. This being so, I am unable to perceive any valid reason why it should not apply with equal force to the case of an express warranty. Whatever may have been the ancient rule of the common law in respect of incumbrances, they have become, in the progress of our civilization, engrafted upon modern conveyancing, and possibly for the very reason that at common law incumbrances were not covered by a general warranty. And being included in the statutory words, "grant, bargain and sell," and expressed in the general warranty, there is, in the present spirit of the law, which looks to substance and common sense rather than form or refinement, no solid foundation for the argument that would separate this covenant from any other that runs with the land. *Foote v. Burnet*, 10 Ohio 317, 333. C. J. Shaw, in *Thayer v. Clemence*, 22 Pick. 493, 494, after conceding the common law rule to be that the covenant against incumbrances is one *in praesenti*, and, therefore, not assignable, says: "There is also a covenant (in the deed) that 'I will warrant and defend.' This is *in futuro*, and runs with the land. The effect of the covenant in this case is to warrant and defend the granted premises against incumbrances upon the land. But the defendant has been evicted upon a mortgage.      *      *      The debt is a personal thing, but the pledge for it was the land, and it is this charge upon the land which gives it the character of realty, and brings it within the operation of the covenant." In *Sprague v. Baker*, 17 Mass. 586, it is held on a similar covenant against "all claims and demands," irrespective of the covenant against incumbrances, that the assignee, who discharges a mortgage on the premises, could maintain action on the general covenant. This is re-affirmed in *Whiting v. Dinsmore*, 6 Cush. 128.

In the deed of Deaver there is an express covenant against "all persons, claims, liens, titles and incumbrances." The petition sets out all these covenants, and invokes them all.

IV. But it is contended that no dower interest of Mrs Houghan, in fact, could legally attach to this lot in question. The act of 1825, in force at the time of Houghan's deed to Deaver, provided that no widow shall be entitled to dower, until all just debts due or to become due by her husband shall have been paid, nor in any lands which have been sold under execution against him in his lifetime. The suggestion is, that the breach of Houghan's covenant created a demand against his estate, and until satisfied his widow could have no dower.

There is no question but the liability of Deaver on his covenants must be determined by the law in force at the time of the contract. If no dower existed at the time it was not competent for any subsequent legislature, by the creation of a dower interest, to add any new burden to Deaver's contract. The State constitution itself prohibited the legislature from passing any law retrospective in its operation. *Kennerly v. Mo. Ins. Co.*, 11 Mo. 206. Dower, however, during the life of the husband is only inchoate. It becomes consummate on the death of the husband; and is assignable under the law in force at the time of his death. *Noel v. Ewing*, 9 Ind. 42; *Kennerly v. Mo. Ins. Co., supra; Thomas v. Hesse*, 34 Mo. 13; *Melizet's case*, 17 Pa. St. 455; *Randall v. Kreiger*, 2 Dill. 447.

Aside from this, I am unable to perceive how the fact that a suit might have been, or might be, maintained against Houghan on his covenants, can be held to bring into operation, as a bar to this action, the statute of 1825. No debt has been established against the estate on account of this covenant; nor is any one moving thereto. His admitted insolvency cannot alter the principle involved. "The meaning of the law is, that among claimants of rights against the estate of a deceased husband, creditors, claiming payment of their just debts, are to be preferred to the widow claiming dower." *Thomas v. Hesse, supra.* I very much question whether the contingency of a husband's liability on his covenant of war-

ranty, conveying the land subject to the dower, is within the purview of "debts" contemplated by this statute, and certainly not when no action has been brought, nor claim presented or proved. The covenant created an obligation but not a debt.

V. It is next insisted that before the plaintiff can recover in this action he should show an actual eviction on account of the broken covenant. This is not tenable, under the facts of this case. The action and judgment for dower, and the satisfaction of that claim are sufficient to meet the demands of the rule of law. *Magwire v. Riggin*, 44 Mo. 514; *Dickson v. Desire, supra*, 167; *Sprague v. Baker*, 17 Mass. 590; *Moore v. Vaile*, 17 Ill. 190; Rawle on Cov., (4 Ed.) 147, *et seq*.

7. ——: eviction.

VI. The record of the proceedings in Houghan against Tyler, for the recovery of dower, though *res inter alios acta* for other purposes, was admissible in this case for the purpose of showing the eviction. *Fields v. Hunter*, 8 Mo. 128, 132. And as the admitted facts showed that Sophia was the wife of Houghan, this is proof that the eviction was by title paramount.

8. ——: judgment inter alios as evidence.

VII. The measure of damages. When this case first went to the court of appeals it was reversed and remanded because there was no proof that the damages allowed in the action for dower between Mrs. Houghan and Tyler, were reasonable and just. 5. Mo. App. 139. This proof was supplied on the re-trial, at least to the satisfaction of the trial court. And as there was some evidence to support its finding, this court will not interfere with its conclusion on the facts. The defendants' counsel contend, with marked zeal and learning, that the rule of damages recognized in plaintiff's instruction, is erroneous, and against the weight of authorities. Their contention is, that as the property did not increase in value during the tenure of Deaver, the dower interest should be limited to the one-third of the purchase money, and in no event should the damages exceed the original purchase

9. ——: measure of damages: dower.

money. It would be but a self-imposed labor to review the multiplied authorities touching this vexed question, and to attempt to deduce a rule as if the question were *res integra.* Our Supreme Court has firmly settled this rule in this State. In *Henderson v. Henderson,* 13 Mo. 153, the court, through Judge Napton, say: "In an action upon a covenant of seizen, the damages are regulated by the purchase money and interest. But the damages for the breach of the covenant against incumbrances depend upon the value of the incumbrance without reference to the value of the land or the purchase money. The covenantee is entitled to recover what he has paid to extinguish the incumbrance, if he has paid a reasonable and fair price." This was followed by *Dickson v. Desire, supra,* 167, and re-affirmed in the *City of St. Louis v. Bissell,* 46 Mo. 157. This rule is supported now by a line of most respectable authorities. I am unwilling, on my part, to depart from it. It is vastly more important that the rules of law, in the State, affecting the rights of landed property and contracts, should be stable, than shifting to find ultimately the basis of wisdom. The overturning of a long line of decisions to meet the hardships of special cases, breaks down respect for the courts, and justifies the assertion that "hard cases are the quicksands of the law."

VIII. Objection is taken to the judgment entered in this case, because it is against the distributee defendants *in solido.* This suit is against the defendants as the heirs and distributees of the covenantor. As such they are liable only to the extent of the assets received from the estate, respectively. Each heir is bound in his own right. The liability is not joint. And where, as in this case, there are several distributees, recovery can be had against each for his *pro rata* share of the assets received and no more.

10. ——: liability of heirs on covenant of ancestor.

No objection was taken below, nor is any urged here, to the joinder of the defendants in the action. Under our Practice Act, designed as it was, to prevent a multiplicity

of suits, where there is a common interest and defense, it was competent, doubtless, to join all the defendants as distributees. R. S., §§ 3465, 3467.

But under the judgment entered herein, which is in the common form against the defendants jointly, on an execution issued thereon the sheriff would be authorized to make the whole debt out of the property of any one defendant. This is beyond the letter of such defendant's liability. It will not do to say that the defendant would be entitled to contribution from the delinquent defendants. The law does not affix to his liability any such trouble, expense or risk. A co-defendant and his property might be beyond the jurisdiction of the court of defendant's State, or he might be insolvent.

In *Strouse v. Barnett*, 3 Dana (Ky.) 391, which was an action to recover against the administrator and commissioner, with whom the heirs were joined, (part of the funds being yet held by the commissioner, and part distributed to the heirs,) funds arising on the sale of slaves in partition, the court held, page 394, that " it was error to decree against the heirs jointly. Such decree might fall upon one only in case of non-residence or insolvency of the other heir, and exceed the amount which was paid over to him by the commissioner." The decree should have been " that each of the distributees pay   *   *   his equal share of the sum, provided his share shall not exceed the amount received by him in the course of distribution." So in *Mason v. Peter*, 1 Munf. (Va.) 446, the court say: " Instead of decreeing that the devisees should pay jointly, it ought to have directed a valuation of their lands respectively and charged them *pro rata*." In *Metcalf v. Smith, supra*, (40 Mo. 576,) it is said: " The court refused, on the application of the plaintiffs, to declare that the defendants were liable *in solido;* and in this, we think, it was correct, for where heirs are proceeded against on account of assets which they have received from the ancestor, they are chargeable only distributably and *pro rata*." This is re-affirmed

in *Pearce v. Calhoun*, 59 Mo. 271. In *Thompson v. School District*, 71 Mo. 495, it is held, conformably to the rule in question, that where the petition in an action against two defendants alleges a liability, partial only on the part of each, to answer plaintiff's demand, a judgment against one for the whole amount is error.

It is perhaps justly inferable from the petition and the agreed statement of facts that the defendants received an equal share of the assets of the estate. This being so, the judgment should have been, that each of the defendants pay his *pro rata* share of the judgment and no more, and that execution issue accordingly. Under section 3673, Revised Statutes, it is now perfectly admissible, even in an action at law, to render such a judgment. Judgment may be rendered against one or more defendants, or all, for equal or unequal amounts. In this form of actions, all the heirs being necessary parties, there must, in the nature of the case, be separate judgments.

On consideration, since the foregoing opinion was written, we are satisfied that where the liability of a married 11. MARRIED WOMEN: woman arises on an obligation existing liability to action. against her prior to coverture, as in this case, she and her husband are properly joined as defendants in the action, and if so, judgment should go against both. This is the exception to the general rule, so frequently announced by this court, that a judgment *in personam* against a married woman is void. *Gruen v. Bamberger*, 11 Mo. App. 261; *Merrill v. City of St. Louis*, 12 Mo. App. 473; *Gray v. Thacker*, 4 Ala. 136 ; *Angel v. Felton*, 8 John. 149 ; *Metcalf v. Smith*, 40 Mo. 572.

It appearing from the agreed statement in this case, " that defendants are children and heirs of said Larkin Deaver, and that they received assets of said estate of Larkin Deaver more than sufficient to pay the amount claimed by plaintiff in this action," it is, therefore, ordered by the court that the judgment of the court of appeals be

reversed, and the cause is remanded to the court of appeals, with directions to reverse the judgment of the circuit court and remand the cause thereto ; with directions to enter up judgment against the defendants as follows : against James Deaver for one-fifth, against Julia Hewett for one-fifth, against Laura Shultz and Amos H. Shultz for one-fifth, against Laura W. Caulfield and John E. Caulfield for one-fifth, and against Maria W. Deaver for one-fifth, of the original judgment rendered herein by the circuit court in favor of the plaintiff against all the defendants, said judgment to bear interest from the date of the original judgment in said circuit court. All concur.

## On Motion for Rehearing.

PER CURIAM.—We are asked to review the opinion delivered in this case, 1st, Because the opinion assumes that the covenant in the *habendum* clause of Deaver's deed embraces a covenant against incumbrances, when in law and fact it was merely a covenant to warrant and defend against incumbrances. It is however quite manifest, from the brief presented in support of the motion, that appellants' real grievance is the amount of recovery adjudged against them, and they return to re-discuss the same matter so strenuously argued in the submission of the case, to-wit : that on the breach of the covenant of warranty touching incumbrances, the amount of damages cannot exceed the original purchase money with interest.

The vice in their argument lies in confounding the covenant of seizin with that against future incumbrances. The rule is well settled that the damages recoverable for a breach of the former covenant are limited by the amount of the purchase money and interest. But the covenant to " forever warrant and defend the said lot of ground and every parcel thereof, against all incumbrances whatsoever, either in law or in equity," is in the nature of an indemnity. Rawle on Cov., 134, 154, 313. Under our statute of

conveyances the employment of the words "grant, bargain and sell" amounts to an express covenant, 1st, That the grantor is seized of an indefeasible estate in fee simple; 2nd, That the estate conveyed is free from incumbrances suffered or done by the grantor; 3rd, For further assurance, etc. It is conceded, under this statute, that if the grantee should be evicted in consequence of a breach of the covenant, the measure of his damages would be the purchase money with interest. And the authorities relied on by counsel in support of the motion, hold that if the grantee, as he may under certain circumstances, pay off the incumbrance without eviction, he could not recover thereon the amount so paid for removing the incumbrance in excess of the purchase money and interest. But as shown in the opinion herein, such is not the rule in this State. "The amount of damages depends upon what the covenantee has been compelled to pay to extinguish the incumbrance." *Henderson v. Henderson*, 13 Mo. 153; *City of St. Louis v. Bissell*, 46 Mo. 157. In support of the latter decision Judge Wagner cites Rawle on Cov., 138, note 1. The text is: "If the character of the incumbrance be such as to admit of removal, the plaintiff is entitled to recover the amount which he has fairly and reasonably paid for its extinguishment." This enunciation, however, Rawle says, must be taken with the qualification that this amount must not exceed the purchase money with interest, in those states in which on covenants of quiet enjoyment and of warranty the limit of damages is the same as on the covenant for seizen. Among the cases cited in support of the text is *Henderson v. Henderson, supra*. The re-affirmance, in all its force, of the doctrine of *Henderson v. Henderson* as late as 1870, in *City of St. Louis v. Bissell*, leaves no doubt but this question is judicially settled that way in this State. The principal difference between the statutory covenant, arising on the words "grant, bargain and sell," and the other general or special covenant is, that the former extends only to defects of title or incumbrances created by the vendor, while the

latter are general, extending to all paramount titles and incumbrances. Rawle on Cov., 188, 189. The statutory covenant against incumbrances and for further assurance, applies only to such as were created by the covenantor or over which he had control, and not to those arising collaterally by the acts of others. *Armstrong v. Darby*, 26 Mo. 517.

The measure of damages in respect of the statutory covenant being thus settled in this State, it seems to me that the whole foundation falls from under the reason that would restrain the operation of the covenant as to incumbrances *in futuro* to a lesser or different amount of damages for its breach. To say there should be one rule of damages in the State for the breach of the covenant against incumbrances *in praesenti*, and another for incumbrances *in futuro*, would be unphilosophical, and involve the court in the absurdest contradiction. The case of an assignment of dower interest very aptly illustrates the good sense and justice of the rule established by our Supreme Court. Where the premises, as in the case at bar, were aliened during the life of the husband, the widow, it is true, is endowable in such lands according to their value at the time of the alienation. And while she would not in such case be entitled to an assignment out of the improvements placed thereon by the labor and money of the alienee, yet I take it the better and settled doctrine is, that she would be entitled to an assignment out of the improvements or advancement in value " arising from extrinsic and collateral causes unconnected with the direct improvements of the alienee." *McClanahan v. Porter*, 10 Mo. 746, 754; Rawle on Cov., 327, 328. Under our statute for the assignment of dower, where the land, as in this case, was not susceptible of division in kind, the yearly value of the widow's dower shall be ascertained. The court shall thereupon render judgment that she be paid " the sum so assessed as the yearly value of her dower, and the like sum on the same day every year thereafter during her natural life." This

assessment is based on the net annual product, without the expenditure of money or labor upon it by the alienee, after deducting charges for taxes and repairs, etc. *Riley v. Clamorgan*, 15 Mo. 331; *Reily v. Bates*, 40 Mo. 469; *Thomas v. Mallinckrodt*, 43 Mo. 58. This incumbrance is embraced within the covenant, and the covenantor has expressly contracted to defend and protect the covenantee against it. Its just and honest fulfillment would demand that he should re-imburse the covenantee the sums he has thus been compelled to pay as a charge on the estate. Execution on such judgment assigning dower goes against the land itself. *Griffin v. Regan, ante*, p. 73.

The rule established, therefore, by the Supreme Court of this State touching the breach of the covenant against incumbrances, and its application to this case, is neither unreasonable nor unjust. And having been so long established, I may well conclude this branch of this discussion in the language of Chancellor Kent in *Pitcher v. Livingston*, 4 John. 1; "On a subject of such general concern and of such momentous interest as the usual covenants in the conveyance of land, the standard for the computation of damages, whatever that standard may be, ought at least to be certain and notorious. The seller and the purchaser are equally interested in having the rule fixed."

The second ground of the motion for rehearing is, that the value of the dower interest was affected by the extreme old age and health of the doweress; and the claim is, that in estimating that interest the rule was disregarded by the circuit court. Without more, it is enough to say, this question was long since settled adversely to the assumption of counsel in *Riley v. Clamorgan*, 15 Mo. 335. Judge Gamble said: "The uncertainty of the widow's life is not to be considered as a cause for reducing the amount, for the uncertainty attaches to the continuance of the annuity which is to be paid in lieu of dower. The sum to be annually paid is the same whether the widow be old

12. DOWER.

or young, and whether the condition of her health gives promise of long life or not."

The final ground of error assigned in the motion is, that as the judgment of the doweress against Mrs. Tyler was *in personam* it did not amount to an eviction of the covenantee, and until an actual eviction there is no breach, *ad damnum* of the general covenant of warranty. We are referred in support of this proposition to *Shelton v. Pease*, 10 Mo. 473; *Caldwell v. Bower*, 17 Mo 564; *Johnson v. Nyce*, 17 Ohio 66.

13. COVENANT· eviction· judgment for dower.

The incumbrance complained of in *Shelton v. Pease* was a mortgage. The declaration was that the defendant had covenanted to warrant and defend the premises against the mortgage—that the lot conveyed was at the time of the conveyance free from incumbrances suffered by the defendant; and then assigned as breach, that the defendant did not pay the said mortgage, and the plaintiff had paid so much toward the satisfaction thereof. What the court really decided, was that the statutory covenant arising on the words " grant, bargain and sell" was restrained and limited so far as the mortgage was concerned by the after occurring special covenant, " particularly against the mortgage above described." And as the plaintiff had declared on the special warranty, *inter alia,* for " that said defendant did not pay said mortgage but that the plaintiff paid a large sum in discharge thereof," there could, under the rule of practice *probatum et allegatum* be no recovery, because the defendant had not covenanted to pay off the mortgage. That was conclusive of the case ; and what follows, to the effect that the mere payment of the mortgage constituted no breach of the covenant of general warranty was a generality, if not *obiter dictum*. Further on, in the same opinion, the learned judge says, in relation to the special covenant: " There must be an eviction, or something equivalent thereto, to constitute a breach of the special covenant." *Caldwell v. Bower* has nothing in it touching this question outside of the syllabus. The mortgage, alleged to consti-

tute the incumbrance, was not paid off by the covenantee, and the judgment of foreclosure itself was reversed on appeal. Of course no cause of action existed on such a state of facts.

*Johnson v. Nyce*, 17 Ohio 66, should be read in connection with the following case in the same volume of *Nyce v. Obertz*, p. 71. The decisions turned principally on the fact that in assigning the dower the "statute (of that state) seems to have been entirely disregarded." The latter case of *Nyce v. Obertz* is an authority directly against the position of appellant's counsel. The same learned judge who wrote the opinion in both cases, says in the latter that the dower interest would constitute an incumbrance, according to the weight of authority, within the terms of such a covenant, and then concedes that when the same is ascertained by the judgment of a court of competent jurisdiction, "the tenant or covenantee may have his action against the covenantor for indemnity. But before the covenantor can be bound by such judgment and decree it must be in conformity with the statute regulating dower." Had the decree been in conformity with the statute, there would have been no difficulty as to the rule of damages.

The manner of assigning the dower, in the case under consideration, was in exact conformity with the mode prescribed by statute of this State, and, therefore, " the tenant or covenantee may have action against the covenantor for indemnity."

I had supposed, since the exhaustive treatment of this question in Rawle on Covenants, (ch. 8, from p. 260 to 289,) that a constructive eviction, especially where the dower interest was established by the judgment of a court of competent jurisdiction, and that judgment was paid by the covenantee, was sufficient to entitle the covenantee to an action on the covenant for a breach. Rawle sums up the matter on pages 288, 289, thus: " It is not necessary that the assertion should be made by a judgment or even a suit, any more than it is necessary that an eviction, when actual,

should be under legal process.    The effect of a judgment, a decree or a suit is, in this relation, no more than an unequivocal assertion of the right by the paramount claimant. According, therefore, to the weight of authority at the present day, the distinction is not whether there has or has not been a judgment in favor of the paramount claim, but whether such claim has or has not been adversely asserted." This subject, with characteristic learning, was discussed by Judge Leonard in *Dickson v. Desire*, 23 Mo. 163, in which the court held that on the covenant of seizin, even, it was not necessary in order to maintain action for its breach that an actual eviction should have occurred.   It was sufficient if damage resulted from the outstanding claim.   And in *Magwire v. Riggin*, 44 Mo. 514, Judge Bliss applied this rule, in its full force, to the case of a dower incumbrance. It was there held that the satisfaction of a judgment, in a proceeding to enforce the assignment of dower, is equivalent to an eviction, for the purpose of a suit by the covenantee against the covenantor.

The motion for rehearing should be denied.   All concur.